[No. 34712. Department One. February 19, 1959.]

CLAYTON BUCHANAN et al., *Appellants*, v. CHARLES E. CASSELL et al., *Respondents*.[1]

*D. W. Moore*, for appellants.

*S. Dean Arnold*, for respondents.

HUNTER, J.—The plaintiffs, Clayton and Hanna Buchanan, brought this action to quiet title to real property under the

[1]Reported in 335 P. (2d) 600.

ten-year adverse possession statute. All of the land in question at one time belonged to the Lewiston-Clarkston Improvement Company. Plaintiffs are the owners of a certain tract of land which lies between state highway No. 3 and the west bank of the Snake river. The tract of land in controversy extends along the east boundary of the plaintiffs' tract and runs easterly to the high-water mark of the west bank of the Snake river, this strip being unplatted property. The plaintiffs seek to tack their possession, which is less than ten years, to that of their predecessors, the Woodrings, in order to come within the statute (RCW 4.16.020).

W. A. Woodring and Gertrude L. Woodring, his wife, contracted for the purchase of lots 2 and 3, block "O" of Vineland, from the Lewiston-Clarkston Improvement Company. The deed they received described the property as platted property, with the exception of a fraction of lot 3 which had been previously conveyed to one Jeoffrey Woodring, and the exception of certain right-of-ways for railroad and highway purposes. W. A. Woodring was the only grantee named in the deed they received. The Woodrings moved onto the property about 1919. They developed the tract by building a home and barn, constructing boundary fences running east and west from the highway on the west to the Snake river on the east. The Woodrings used the disputed area for farming, including the planting of potatoes, grain and corn. They also used the area for pasturing stock and utilized the barn for use of the stock and later built a boathouse on the disputed area. The Woodrings were in possession for a period of thirty-two years. To all appearances they treated all the property to the edge of the river as their own.

Shortly before his death, on June 13, 1951, W. A. Woodring made a conveyance of the land to his wife, Gertrude, by a quitclaim deed which he signed with an "X." The property conveyed was identical to that contained in his deed from the Lewiston-Clarkston Improvement Company, except that his deed described the property by metes and bounds. The description begins at the southeast corner of

lot 3, then by the direction in degrees and the distance in feet it circumscribes the property back to the point of beginning. There are no visible monuments mentioned in the deed to which the description refers. The easterly line of the metes and bounds description coincides with the government surveyed meander line, although the surveyed meander line is not mentioned as such in the metes and bounds description. The land in dispute, as heretofore designated, runs from this surveyed meander line to the high-water mark of the Snake river. Thereafter, on October 28, 1952, Gertrude Woodring sold all of the property to the plaintiffs. The description in her deed of conveyance, which she testified she thought included the disputed strip, was the same as contained in the quitclaim deed from her husband.

The defendants, Charles and Laurel Cassell, claim title to the property by virtue of a quitclaim deed they received from the successor in interest to the Lewiston-Clarkston Improvement Company. Exhibits admitted by stipulation showed that the defendants have title deducible of record. The disputed area is not assessed to anyone for tax purposes, nor have any taxes been paid by anyone. The state of Washington was joined to foreclose any right it may have had for inheritance tax due from the estate of W. A. Woodring. However, the state did not appear.

At the close of plaintiffs' case, the defendants moved for a dismissal of plaintiffs' action with prejudice. The court granted this motion and entered findings of fact, conclusions of law and judgment accordingly, quieting title in the defendants. Plaintiffs have appealed.

Appellants have assigned error (1) to the court's granting respondents' motion to dismiss with prejudice, at the close of the appellants' case, and (2) to the entry of the following portion of the trial court's finding of fact No. 1:

". . . that Plaintiffs' predecessors in interest did not claim or intend to hold said lands adversely and that Plaintiffs' possession if adverse did not commence until October 28, 1952."

The appellants contend that the possession of their predecessors, the Woodrings, was adverse to the title of the

true owner, and therefore the appellants, being in privity with the Woodrings, have a right to tack their possession to that of their predecessors, to meet the requirements of the ten-year adverse possession statute.

■ This state follows the rule that a purchaser may tack the adverse use of its predecessor in interest to that of his own where the land was intended to be included in the deed between them, but was mistakenly omitted from the description. In *Faubion v. Elder*, 49 Wn. (2d) 300, 301 P. (2d) 153 (1956), we said:

"As to point (3), it is apparent that appellant and his predecessors were claiming *more* land than their deeds described. *It is sufficient to state that the description in the deeds will be held to include the land in dispute in this case,* since, where there is privity between successive occupants holding adversely to the holder of the true title continuously, the successive periods of occupation may be united or tacked to each other to make up the time of adverse holding. *Naher v. Farmer*, 60 Wash. 600, 111 Pac. 768, and cases cited." (Italics ours.)

■ It is not disputed that the use of the property by the Woodrings was such as to establish a *prima facie* case of meeting all the qualifications of adverse possession in the absence of any circumstances showing a contrary intention. We stated in *Nixon v. Merchant*, 19 Wn. (2d) 97, 141 P. (2d) 411 (1943), quoting from *Rock Springs v. Sturm*, 39 Wyo. 494, 273 Pac. 908, 97 A. L. R. 1, as follows:

" ' . . . the actual occupation, use, and improvement of the premises of the claimant as if he were in fact the owner thereof will, *in the absence of explanatory circumstances showing the contrary*, be sufficient to raise a presumption of his entry and holding as absolute owner, and, *unless rebutted*, will establish the fact of a claim of right.' " (Italics ours.)

The respondents contend this contrary intention was sufficiently established in the present case to overcome the presumption, by the fact that the quit-claim deed from W. A. Woodring to his wife contained a metes and bounds description omitting the disputed property.

The sole question is: whether the deed in itself is sufficient to rebut the presumption of his entry and holding as absolute owner, in hostility to the true owner.

The basis of the trial court's conclusion that this presumption was overcome by the deed was the following statement as it appeared in its oral opinion:

". . . When he made that deed out he must have had it surveyed or somebody had it surveyed that he knew about that he wasn't claiming to the river, that he knew all his rights at that time. There must have been a survey or he could not have drawn that deed, when he deeded it to her. I realize if it had been the same as the other descriptions, just lots 2 and 3, and no meander line, just lots 2 and 3, then the court would believe they went to the river. . . ."

There is no evidence in the record upon which these deductions of the trial court can be based without resorting to speculation. There is no direct evidence that there was a survey, or any testimony that a survey was necessary for the preparation of this metes and bounds description. Neither is there any testimony that the description could not have been prepared by referring to the descriptions in deeds of record and the recorded plat.

If we could indulge in assumptions, it could be assumed that W. A. Woodring, by his apparent limited education as indicated by his inability to sign his name, may not have known what the technical description contained, or the method used in its preparation. It would be more reasonable to assume he thought the deed to his wife contained a correct description of the land they had used for their home during the past thirty-two years.

We are not substituting our judgment for that of the trial court, but hold that the conclusions of the trial court are speculative as to the circumstances under which the description was drafted, and as to W. A. Woodring's knowledge of what the description contained, and that the trial court's finding of fact No. 1 is not based upon any substantial evidence in the record. The deed in itself is not sufficient to overcome the presumption of the intention of the Woodrings to claim the property in question as their own, shown

by their continued use and occupancy of this land for thirty-two years consistent with ownership.

■ It is contended by the respondents, however, that the appellants can in no event prevail, by their failure to assign error to the entry of the court's finding of fact No. III; that the respondents are the legal owners of the disputed property, and this has therefore become the established fact of the case, invoking Rule on Appeal 43, 34A Wn. (2d) 17, as amended, effective January 2, 1953.

The finding that the respondents are the legal owners of the said disputed property, is nothing more than a conclusion of law unsupported by the record, since the appellants have established a *prima facie* case of ownership by adverse possession. The above rule *supra*, does not apply to conclusions of law. *Grove v. Payne*, 47 Wn. (2d) 461, 288 P. (2d) 242 (1955); *Kane v. Klos*, 50 Wn. (2d) 778, 314 P. (2d) 672 (1957).

The trial court committed error in granting respondents' motion for dismissal at the close of appellants' case. The judgment entered in pursuance thereof is reversed and the case remanded for a new trial.

MALLERY, HILL, FINLEY, and OTT, JJ., concur.