ANNA VIRGINIA BUTLER, as *Executrix, Respondent,* v.
ORLAND ANDERSON et al., *Defendants,* GRADY
HAMMON et al., *Appellants.**

*Burkheimer, Cavender, Wyman & Curtis,* by *Michael S. Curtis,* for appellants.

*Newman & McCann,* for respondent.

HUNTER, J.—This appeal arises from an action instituted by the plaintiff (respondent), Anna Butler, individually and as executrix of the estate of her deceased husband, Harry R. Butler, to quiet title to a narrow strip of property between her tract and that of the defendants (appellants), W. P. vonMarenholtz and his wife. Both tracts are located

*Reported in 426 P.2d 467.

on the shores of Lake Sammamish. Plaintiff Anna Butler, who will be referred to as the sole owner of the Butler tract, also sought damages for the destruction of certain natural and planted growth on the disputed strip.

The trial court found that there was actual, open, continuous and exclusive adverse possession by the plaintiff to a portion of the disputed strip. It entered judgment quieting title to this portion in favor of the plaintiff and awarded her $1,750 damages for destruction of the greenery. Defendants appeal.

The defendants first assign error to the trial court's entry of the finding of adverse possession. They contend that it is not supported by the evidence. The evidence supporting the finding of the trial court is as follows:

Plaintiff and her husband purchased their lakefront lot in 1927. The following illustrative diagram shows the respective tracts of the parties as they appeared at the time of trial. The shaded portion reflects that part of the disputed strip which the trial court found to have been adversely possessed by the plaintiff. The plaintiff does not question this finding, on appeal, even though her original claim extended beyond the shaded area to the extreme southwestern corner of her tract (not pictured).

The approximate south boundary of the Butler tract, pictured in this diagram as the cyclone fence, is the surveyed line between the two parcels. The record discloses that when the plaintiff purchased the northern tract, its south boundary was irregularly defined by an old wire and cedar post fence, which had been placed just south of the line before the possession of either party. The fence was not cared for by the plaintiff or her husband and fell into disrepair.

Plaintiff never regarded the irregular fence line as her south boundary; but at all times believed the line to extend from a single piling in the lake to the southwesterly corner of her lot, continuing along the south line of the shaded area. Pursuant to this belief, the plaintiff and her husband constructed a summer cottage on the property in 1928, and planted a lawn running to the water line, shortly thereafter. Both desired privacy to the south for their cottage and the swimming area, and set about to improve the boundary by planting a 50- to 60-foot holly hedge beside and to the rear of the cottage. The angle of this hedge was on line with the piling and engulfed the old fence at various points within its foliage.

In addition, the plaintiff allowed the native growth from the water line to the planted holly hedge to grow and each year, after it grew to hedge dimensions, the plaintiff's husband or other relatives would trim the south side of both the native hedge and the holly hedge on line with the offshore piling as the boundary. A gate, shown in the diagram, indicates the division between the planted holly hedge and the native hedge. The width of this native hedge varied from 1 to 2 feet near the cottage to 10 to 12 feet near the shoreline. Its height exceeded 10 feet, and in length, the hedge ran from the cottage to just above the shoreline.

The grass planted by plaintiff's husband was mowed by him during these years and included a patch of grass on plaintiff's side of the native hedge, one below the hedge near the water, and a 6-foot strip on the other side, now designated by the trial court's ruling as the vonMahrenholtz property. One disinterested witness unequivocally

stated that in the early '30s he had helped the plaintiff's husband mow this lawn on both sides of the native hedge, as well as trim both sides of this growth. Other testimony corroborated that this hedge and lawn care continued for many years past the statutory period.

Evidence was also introduced to show that the plaintiff had over the years, since at least 1928, made other improvements on the triangular shaped strip by augmenting the native growth of the hedge below the light pole with trees, berry vines, and flowers. These plantings were described as golden willows, elm, privet, honeysuckle, blackberries, and wild roses.

The record further reveals that in the '30s plaintiff's husband laid a pipeline on the ground from the lake to the rear of the Butler home, and that a portion of it came over across the south line for several feet on the vonMahrenholtz property. By 1958 this pipeline became obscured in the growth of the native hedge. At the lakefront, in front of the hedge, the pipeline was connected to a pump that lifted irrigation water from the lake.

Between the native hedge and the house, children had trampled a path to a width of 3 feet and the fence had fallen far enough to permit regular grass mowing between it and the southernmost corner of the house.

There was abundant testimony that from 1927, and at least through the '30s, a cable stretched between the two properties from the piling in the lake up to the hedge, in general extension of its course. This cable served as a clear marker of the swimming area utilized by the Butlers.

By 1958, when the defendants acquired the tract to the south of the plaintiff, the native hedge line had become overgrown; Mr. Butler being advanced in age and dying thereafter in 1963. A survey by the defendants in 1958 revealed a 7-foot shoreline encroachment by the native growth. Nothing was said or done about the hedge line until 1964, when the defendants hired contractors to erect the heretofore designated 8-foot cyclone fence stretching the entire length of the south boundary line.

In constructing the new fence, the contractors bulldozed down the line to the waterfront, removing all growth on both sides of the line to a width of 15 to 20 feet. The growth removed included all of the greenery previously mentioned as planted or kept in a native state by the plaintiff, the old wire and cedar fence, and the irrigation piping. No consent was obtained from the plaintiff to this bulldozing and removing of the hedge barrier, and upon her discovery of this destruction and placement of the wire fencing, a part of which was only 10½ inches from the corner of her cottage, she brought this action to quiet title. Supporting her claim, plaintiff asserted adverse use and improvement of the strip for more than the statutory period of 10 years under RCW 4.16.020, commencing in 1928.

Numerous cases have concerned themselves recently with this exact problem—adverse possession of narrow strips between adjacent residential tracts. See *Mesher v. Connolly,* 63 Wn.2d 552, 388 P.2d 144 (1964) (3 feet) and cases cited: *El Cerrito, Inc. v. Ryndak,* 60 Wn.2d 847, 376 P.2d 528 (1962) (2½ feet by 109 feet); *Mugaas v. Smith,* 33 Wn.2d 429, 206 P.2d 332, 9 A.L.R. 2d 846 (1949) (3½ feet by 135 feet); *Skoog v. Seymour,* 29 Wn.2d 355, 187 P.2d 304 (1947) (3½ feet by 172 feet); *Thornely v. Andrews,* 45 Wash. 413, 88 Pac. 757 (1907) (2 feet to 2 feet 7 inches by length of lot).

█ In them, we have consistently followed the traditional rule that to constitute adverse possession, there must be actual possession which is uninterrupted, open and notorious, hostile and exclusive, and under a claim of right made in good faith for the statutory period. *Skansi v. Novak,* 84 Wash. 39, 146 Pac. 160 (1915). The nature of possession and attendant acts necessary to constitute adverse use as to a residential parcel or property are deemed sufficient if a person pleading the statute takes and maintains such possession and exercises such open dominion as ordinarily marks the conduct of owners in general, in holding, managing, and caring for property of like nature and condition. *Mesher v. Connolly, supra,* at 557.

In the instant case, the adverse acts found by the trial court, *taken together*, support the plaintiff's claim that the holding, managing and caring for the disputed strip was conduct consistent only with that of a true owner.

The trial court therefore properly determined that the improvements on the strip from the light pole to the offshore piling (the shaded area on the diagram) were actual, open, exclusive, and continuously adverse to the title of the defendants and their predecessors, and continued for the statutory period long prior to the taking of possession by the vonMahrenholtzes in 1958.

The defendants contend, however, that the trial court erred in striking the words "notorious" and "hostile" from its formal findings.

█ Although proof of possession notorious and hostile to that of the true owner is essential to establish a claim of prescriptive right by adverse use, it is not necessary that these words be recited in the findings of fact, provided that the findings state the existence of facts that constitute such a use. In the instant case, such a use is disclosed by the trial court's findings. The hedge and other improvements, taken together, as detailed in the findings, were there as a clear marker of the claim asserted by the plaintiff, as against all others; and we are satisfied that the use of the property in the manner described was sufficient to put the true owner on notice of the adverse holding.

The defendants further contend that the trial court erred in failing to find that plaintiff's possession was under a claim of right. Neither is it necessary that this particular wording appear in the findings. Finding of fact No. 5 specifically noted that the plaintiff continually regarded the disputed strip as on her property; although, as the record indicates, the extent of this claim was mistakenly asserted as being on line with the offshore piling to the rear southwestern corner of the plaintiff's property.

The defendants finally contend that the trial court erred in failing to measure damages for permanent destruction of the greenery on the basis of the diminished value of the

land, and for allowing damages on the approximated cost of restoration. We think the trial court properly limited damages to the reasonable expense of restoring the destroyed hedge and plantings.

■ Land is unique and any substantial injury to real property is permanent in the sense that it may not be capable of exact restoration. Yet where, as here, the destruction is of such a nature that it is possible to restore the property, the trial court should limit its award to reasonable costs of restoration. *Messenger v. Frye*, 176 Wash. 291, 28 P.2d 1023, 161 A.L.R. 554 (1934).

The judgment of the trial court is affirmed.

FINLEY, C. J., HILL and ROSELLINI, JJ., and BARNETT, J. Pro Tem., concur.

June 1, 1967. Petition for rehearing denied.