[No. 39955. Department One. October 2, 1969.]

DONALD K. FADDEN et al., *Respondents*, v. RALPH PURVIS et al., *Appellants*.*

*Ralph Purvis*, pro se.

*Skeel, McKelvy, Henke, Evenson & Uhlman* and *Frederick V. Betts*, for respondents.

WEAVER, J.—Defendants appeal from a judgment that fixes with particularity the property or division line between defendants' property on the north and plaintiffs' property on the south. Both properties abut on Hood Canal.

Shortly after H. D. Fadden (father and predecessor in interest of plaintiff Donald K. Fadden) purchased his property in 1936, he had it surveyed by Mr. Treadwell, chief engineer of the Port of Seattle and licensed civil engineer. Permanent cement markers were placed at the four corners of the property.

In 1937 or 1938, H. D. Fadden constructed a small garage near the northern boundary; it was used as living quarters

*Reported in 459 P.2d 385.

for several years. He also planted a small orchard near the northeast corner of the property.

In 1951, defendants, purchased the property to the north. They had Olin Sprague, a licensed surveyor, survey the property. Mr. Sprague's survey disclosed that the Tread-well line was too far north. As a result, Mr. Fadden agreed to and did move the northwest and northeast cement corner markers approximately 3 feet to the south, thus placing the garage closer to the property line. Defendants built a fence along the Sprague line from the shore eastward, a portion of the distance of the then common boundary.

Plaintiffs purchased their property from H. D. Fadden in 1953. They maintained a tool shed "right up to the fence line," and piled lumber near it.

In 1964, defendants again had the property line surveyed by George Roats, a licensed surveyor. This was the third survey of the property line.

The Roats' survey fixed a line approximately 25 feet south of the Sprague survey along which defendants had built their fence in 1951. The Roats' survey disclosed that a substantial portion of plaintiffs' house and garage encroached upon the disputed strip of land.

We agree with the trial judge's observation that "it doesn't appear . . . that there is any substantial question of fact in this case." The judge found that plaintiffs, relying upon defendants' survey, believed the Sprague line to be the division line and acted upon this belief for more than the 10-year period required for adverse possession. The trial judge stated:

> Mr. Purvis himself testified that he believed that that was the line [the Sprague line]. That's the thing that is relevant here, but even more important, the other party on the other side of the line accepted that, retreated or dropped back a distance of some three feet in reliance upon the Sprague survey. Then the defendant here, Mr. Purvis, caused a fence to be built. . . . Furthermore, Mr. Purvis said that he always considered that fence to be the line. But what is more important, the party who is making the adverse claim, and what they claim or be-

lieve is the important thing,—we have here an owner who, relying upon a survey bought and paid for by his neighbor, believes that that is the line. And this continued from 1951 up to apparently about 1963, considerably over ten years.

Fundamentally, this is a factual appeal. Was the plaintiffs' possession of the disputed strip of land actual, open, notorious, hostile, uninterrupted and exclusive under a claim of right for the statutory period?

In *Krona v. Brett*, 72 Wn.2d 535, 433 P.2d 858 (1967), this court stated:

> When an action, as in the case at bar, is brought to establish title by adverse possession of a strip of land dividing the parties' properties, the plaintiff is not precluded from recovery merely because a fence dividing the properties was placed in that location by the mistake of the parties' predecessors in interest, if the plaintiff has openly and notoriously evinced the necessary intention to claim the land he was using up to the fence. . . .

> In defining what constitutes sufficient adverse possession, this court, in *Butler v. Anderson*, 71 Wn.2d 60, 64, 426 P.2d 467 (1967), reiterated the well-established rule that:

>> [T]o constitute adverse possession, there must be actual possession which is uninterrupted, open and notorious, hostile and exclusive, and under a claim of right made in good faith for the statutory period. *Skansi v. Novak*, 84 Wash. 39, 146 Pac. 160 (1915). The nature of possession and attendant acts necessary to constitute adverse use as to a residential parcel or property are deemed sufficient if a person pleading the statute takes and maintains such possession and exercises such open dominion *as ordinarily marks the conduct of owners in general, in holding, managing, and caring for property of like nature and condition. Mesher v. Connolly*, [63 Wn.2d 552, 388 P.2d 144 (1964)]. . . . (Italics ours.)

A mistake in fixing a boundary does not preclude a possession based upon that boundary from becoming adverse, for it is the intention of the party claiming a disputed area that is pertinent. If a party claims possession to a visible boundary in a manner consistent with the necessary attri-

butes of adverse possession, then the *character of the possession* is adverse. *Brown v. Hubbard,* 42 Wn.2d 867, 259 P.2d 391 (1953). *See also, Houplin v. Stoen,* 72 Wn.2d 131, 431 P.2d 998 (1967).

The facts of the instant case meet this test. We cannot disturb the trial court's findings.

Finally, defendants urge that the court erred when it extended the property line, as determined eastward from the end of defendants' fence placed upon the Sprague survey line, to the undisputed eastern boundary of plaintiffs' property. We cannot agree.

 As this court pointed out in *Frolund v. Frankland,* 71 Wn.2d 812, 817, 431 P.2d 188 (1967):

> [W]hat constitutes possession or occupancy of property for purposes of adverse possession necessarily depends to a great extent upon the nature, character, and locality of the property involved and the uses to which it is ordinarily adapted or applied. In this vein, we have accepted the view that the necessary occupancy and use of the property involved need only be of the character that a true owner would assert in view of its nature and location.

When defendants had the Sprague survey made in 1951, built their fence in accordance with it, and had H. D. Fadden move his northeast concrete corner marker 3 feet to the south, they, as rural landowners of ordinary prudence, were upon notice and inquiry that H. D. Fadden claimed the property south of the fence and marker. There is nothing to indicate that the division boundary was to be anything but a straight line. The existence of the small orchard and cement marker in the northeast corner of plaintiffs' property is sufficient to show possession and occupancy. Our conclusion is supported by the rationale of *Frolund v. Frankland, supra.*

The judgment is affirmed.

HUNTER, C. J., FINLEY, HAMILTON, and McGOVERN, JJ., concur.

---

December 9, 1969. Petition for rehearing denied.