[No. 141-41244-2.    Division Two.    October 15, 1970.]

JOSEPH C. HOWARD *et al., Respondents,* v. V. WALDEMAR
KUNTO *et al., Appellants.*

*Glenn A. Correa,* for appellants.

*R. F. Dotsch* and *Philip W. Richardson,* for respondents.

PEARSON, J.—Land surveying is an ancient art but not one free of the errors that often creep into the affairs of men. In this case, we are presented with the question of what happens when the descriptions in deeds do not fit the land the deed holders are occupying. Defendants appeal from a decree quieting title in the plaintiffs of a tract of land on the shore of Hood Canal in Mason County.

At least as long ago as 1932 the record tells us that one McCall resided in the house now occupied by the appellant-defendants, Kunto. McCall had a deed that described a 50-foot-wide parcel on the shore of Hood Canal. The error[1] that brings this case before us is that the 50 feet described in the deed is not the same 50 feet upon which McCall's house stood. Rather, the described land is an adjacent 50-foot lot directly west of that upon which the house stood. In other words, McCall's house stood on one lot and his deed described the adjacent lot.[2] Several property owners to the west of defendants, not parties to this action, are similarly situated.

Over the years since 1946, several conveyances occurred, using the same legal description and accompanied by a transfer of possession to the succeeding occupants. The Kuntos' immediate predecessors in interest, Millers, desired to build a dock. To this end, they had a survey performed which indicated that the deed description and the physical occupation were in conformity. Several boundary stakes were placed as a result of this survey and the dock was constructed, as well as other improvements. The house as

---

[1] Plaintiff's survey, the validity of which is challenged by defendant, demonstrates the error.

[2] Defendant's deed and chain of title purported to convey

"The West fifty (50) feet of the East two hundred (200) feet of Government Lot two (2), Section nineteen (19); and the West fifty (50) feet of the East two hundred (200) feet of Government Lot one (1), Section thirty (30); all in Township twenty-two (22) North, of Range two (2) West, W.M. . . ."

The land defendants and their predecessors occupied, according to the survey, was the "West 50 feet of the east 150 feet of Government Lot 2, in Section 19, Township 22 North, of Range 2 West of W.M. . . ."

well as the others in the area continued to be used as summer recreational retreats.

The Kuntos then took possession of the disputed property under a deed from the Millers in 1959. In 1960 the respondent-plaintiffs, Howard, who held land east of that of the Kuntos, determined to convey an undivided one-half interest in their land to the Yearlys. To this end, they undertook to have a survey of the entire area made. After expending considerable effort, the surveyor retained by the Howards discovered that according to the government survey, the deed descriptions and the land occupancy of the parties did not coincide. Between the Howards and the Kuntos lay the Moyers' property. When the Howards' survey was completed, they discovered that they were the record owners of the land occupied by the Moyers and that the Moyers held record title to the land occupied by the Kuntos. Howard approached Moyer and in return for a conveyance of the land upon which the Moyers' house stood, Moyer conveyed to the Howards record title to the land upon which the Kunto house stood. Until plaintiffs Howard obtained the conveyance from Moyer in April, 1960, neither Moyer nor any of his predecessors ever asserted any right to ownership of the property actually being possessed by Kunto and his predecessors. This action was then instituted to quiet title in the Howards and Yearlys. The Kuntos appeal from a trial court decision granting this remedy.

At the time this action was commenced on August 19, 1960,[3] defendants had been in occupance of the disputed property less than a year. The trial court's reason for denying their claim of adverse possession is succinctly stated in its memorandum opinion: "In this instance, defendants

---

[3]The inordinate delay in bringing this matter to trial appears from the record to be largely inexcusable. However, neither counsel who tried the case was at fault in any way. We have intentionally declined to consider defendant's motion (probably well founded) to dismiss this case for want of prosecution (Rules of Pleading, Practice and Procedure 41.04W (1950)) for the reason that a new trial of the same issues would be inevitable and in light of our disposition of the case on the merits, defendants are not prejudiced by disregarding the technical grounds.

have failed to prove, by a preponderance of the evidence, a continuity of possession or estate to permit tacking of the adverse possession of defendants to the possession of their predecessors."

Finding of fact 6[4], which is challenged by defendants, incorporates the above concept and additionally finds defendant's possession not to have been "continuous" because it involved only "summer occupancy."

Two issues are presented by this appeal:

(1) Is a claim of adverse possession defeated because the physical use of the premises is restricted to summer occupancy?

(2) May a person who receives record title to tract A under the mistaken belief that he has title to tract B (immediately contiguous to tract A) and who subsequently occupies tract B, for the purpose of establishing title to tract B by adverse possession, use the periods of possession of tract B by his immediate predecessors who also had record title to tract A?

In approaching both of these questions, we point out that the evidence, largely undisputed in any material sense, es-

---

[4]"In the instant case the defendants' building was not simply over the line, but instead was built wholly upon the wrong piece of property, not the property of defendants, described in Paragraph Four (4) of the complaint herein, but on the property of plaintiffs, described in Paragraph Three of the complaint and herein. That the last three deeds in the chain of title, covering and embracing defendants' property, including defendants' deed, were executed in other states, specifically, California and Oregon. And there is no evidence of pointing out to the grantees in said three deeds, aforesaid, including defendants' deed, of any specific property, other than the property of defendants, described in their deed, and in Paragraph Four (4) of the complaint, and herein; nor of any immediate act of the grantees, including defendants, in said Three (3) deeds, aforesaid, of taking possession of any property, other than described in said three (3) deeds, aforesaid; and the testimony of husband, defendant, was unequivocally that he had no intention of possessing or holding anything other than what the deed called for; and, that there is no showing of any continuous possession by defendants or their immediate predecessors in interest, since the evidence indicates the property was in the nature, for us, as a summer occupancy, and such occupancy and use was for rather limited periods of time during comparatively short portions of the year, and was far from continuous."

tablished that defendant or his immediate predecessors did occupy the premises, which we have called tract B, as though it was their own for far more than the 10 years as prescribed in RCW 4.16.020.[5]

We also point out that finding of fact 6 is not challenged for its factual determinations but for the conclusions contained therein to the effect that the continuity of possession may not be established by summer occupancy, and that a predecessor's possession may not be tacked because a legal "claim of right" did not exist under the circumstances.

We start with the oft-quoted rule that:

[T]o constitute adverse possession, there must be actual possession which is *uninterrupted,* open and notorious, hostile and exclusive, and under a *claim of right* made in good faith for the statutory period.

(Italics ours.) *Butler v. Anderson,* 71 Wn.2d 60, 64, 426 P.2d 467 (1967). *Also see Fadden v. Purvis,* 77 W.D.2d 22, 459 P.2d 385 (1969) and cases cited therein.

We reject the conclusion that summer occupancy only of a summer beach home destroys the continuity of possession required by the statute. It has become firmly established that the requisite possession requires such possession and dominion "as ordinarily marks the conduct of owners in general, in holding, managing, and caring for property of like nature and condition." *Whalen v. Smith,* 183 Iowa 949, 953, 167 N.W. 646 (1918). *Also see Mesher v. Connolly,* 63 Wn.2d 552, 388 P.2d 144 (1964); *Skoog v. Seymour,* 29 Wn.2d 355, 187 P.2d 304 (1947); *Butler v. Anderson, supra; Fadden v. Purvis, supra.*

We hold that occupancy of tract B during the summer

---

[5]This statute provides:

"4.16.020   Actions to be commenced within ten years. The period prescribed in RCW 4.16.010 for the commencement of actions shall be as follows:

"Within ten years:

"Actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appears that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the premises in question within ten years before the commencement of the action."

months for more than the 10-year period by defendant and his predecessors, together with the continued existence of the improvements on the land and beach area, constituted "uninterrupted" possession within this rule. To hold otherwise is to completely ignore the nature and condition of the property. *See Fadden v. Purvis, supra.*

We find such rule fully consonant with the legal writers on the subject. In F. Clark, Law of Surveying and Boundaries, § 561 (3d ed. 1959) at 565: "Continuity of possession may be established although the land is used regularly for only a certain period each year." Further, at page 566:

> This rule [which permits tacking] is one of substance and not of absolute mathematical continuity, provided there is no break so as to sever two possessions. It is not necessary that the occupant should be actually upon the premises continually. If the land is occupied during the period of time during the year it is capable of use, there is sufficient continuity.

We now reach the question of tacking. The precise issue before us is novel in that none of the property occupied by defendant or his predecessors coincided with the property described in their deeds, but was contiguous.

In the typical case, which has been subject to much litigation, the party seeking to establish title by adverse possession claims *more* land than that described in the deed. In such cases it is clear that tacking is permitted.

In *Buchanan v. Cassell,* 53 Wn.2d 611, 614, 335 P.2d 600 (1959) the Supreme Court stated:

> This state follows the rule that a purchaser may tack the adverse use of its predecessor in interest to that of his own where the land was intended to be included in the deed between them, but was mistakenly omitted from the description.

*El Cerrito, Inc. v. Ryndak,* 60 Wn.2d 847, 376 P.2d 528 (1962).

The general statement which appears in many of the cases is that tacking of adverse possession is permitted if the successive occupants are in "privity." *See Faubion v. Elder,* 49 Wn.2d 300, 301 P.2d 153 (1956). The deed running

between the parties purporting to transfer the land possessed traditionally furnishes the privity of estate which connects the possession of the successive occupants. Plaintiff contends, and the trial court ruled, that where the deed does not describe *any* of the land which was occupied, the actual transfer of possession is insufficient to establish privity.

To assess the cogency of this argument and ruling, we must turn to the historical reasons for requiring privity as a necessary prerequisite to tacking the possession of several occupants. Very few, if any, of the reasons appear in the cases, nor do the cases analyze the relationships that must exist between successive possessors for tacking to be allowed. *See* W. Stoebuck, *The Law of Adverse Possession In Washington* in 35 Wash. L. Rev. 53 (1960).

The requirement of privity had its roots in the notion that a succession of trespasses, even though there was no appreciable interval between them, should not, in equity, be allowed to defeat the record title. The "claim of right," "color of title" requirement of the statutes and cases was probably derived from the early American belief that the squatter should not be able to profit by his trespass.[6]

However, it appears to this court that there is a substantial difference between the squatter or trespasser and the property purchaser, who along with several of his neighbors, as a result of an inaccurate survey or subdivision,[7] occupies and improves property exactly 50 feet to the east of that which a survey some 30 years later demonstrates that they in fact own. It seems to us that there is also a strong public policy favoring early certainty as to the location of land ownership which enters into a proper interpretation of privity.

On the irregular perimeters of Puget Sound exact deter-

---

[6]The English common law does not require privity as a prerequisite for tacking. *See* F. Clark, Law of Surveying and Boundaries, § 561 (3d ed. 1959) at 568.

[7]Defendants' deed and chain of title had an alternate description referring to an unrecorded plat called the Navy Yard Additions 1 and 2.

mination of land locations and boundaries is difficult and expensive. This difficulty is convincingly demonstrated in this case by the problems plaintiff's engineer encountered in attempting to locate the corners. It cannot be expected that every purchaser will or should engage a surveyor to ascertain that the beach home he is purchasing lies within the boundaries described in his deed. Such a practice is neither reasonable nor customary. Of course, 50-foot errors in descriptions are devastating where a group of adjacent owners each hold 50 feet of waterfront property.

The technical requirement of "privity" should not, we think, be used to upset the long periods of occupancy of those who in good faith received an erroneous deed description. Their "claim of right" is no less persuasive than the purchaser who believes he is purchasing *more* land than his deed described.

In the final analysis, however, we believe the requirement of "privity" is no more than judicial recognition of the need for some reasonable connection between successive occupants of real property so as to raise their claim of right above the status of the wrongdoer or the trespasser. We think such reasonable connection exists in this case.

■ Where, as here, several successive purchasers received record title to tract A under the mistaken belief that they were acquiring tract B, immediately contiguous thereto, and where possession of tract B is transferred and occupied in a continuous manner for more than 10 years by successive occupants, we hold there is sufficient privity of estate to permit tacking and thus establish adverse possession as a matter of law.

We see no reason in law or in equity for differentiating this case from *Faubion v. Elder*, 49 Wn.2d 300, 301 P.2d 153 (1956) where the appellants were claiming *more* land than their deed described and where successive periods of occupation were allowed to be united to each other to make up the time of adverse holding. To the same effect *see Naher v. Farmer*, 60 Wash. 600, 111 P. 768 (1910), and cases cited therein; *Buchanan v. Cassell*, 53 Wn.2d 611, 335 P.2d 600

(1959) and cases cited therein; *El Cerrito, Inc. v. Ryndak*, 60 Wn.2d 847, 376 P.2d 528 (1962); *See* 17 A.L.R.2d 1128 (1951). This application of the privity requirement should particularly pertain where the holder of record title to tract B acquired the same with knowledge of the discrepancy.

Judgment is reversed with directions to dismiss plaintiffs' action and to enter a decree quieting defendants' title to the disputed tract of land in accordance with the prayer of their cross complaint.

ARMSTRONG, C. J., and PETRIE, J., concur.

Petition for rehearing denied November 2, 1970.

Review denied by Supreme Court November 25, 1970.