150

[No. 3232-1. Division One. August 23, 1976.]

RUSSELL J. REYMORE, ET AL, *Appellants*, v. WILBURN K. THARP, ET AL, *Respondents*.

*Wayne A. Wyman,* for appellants.

*Riach, Gese, Seather & Mueller* and *Vern J. Seather,* for respondents.

HENRY, J.*—Russell J. Reymore and his wife (hereinafter Reymores) brought this action against their neighbors William K. Tharp and his wife (hereinafter Tharps) seeking primarily to establish the boundary line between the two parties' vacation properties. The trial court held that the Tharps had acquired by adverse possession an 8-foot strip of property of which both parties were claiming ownership. The Reymores appeal.

The pertinent facts which were presented to the trial court are as follows.

In 1951, the Tharps purchased a lot at Warm Beach (Port Susan) in Snohomish County, Washington, and used it as vacation property. In 1955, the Reymores purchased the

_____
*Judge Edward E. Henry is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

adjoining lot immediately to the south. Both properties were vacant when purchased, and each party built a cabin and used the property as a vacation home, primarily between May and September and weekends throughout the year. The Tharps built a cabin in 1956 and the Reymores built one in 1959.

At trial, the Tharps testified that when they bought the property, they were shown some "posts" which they assumed established their northern boundary, that they measured from that line south to determine the southern boundary and that along that boundary line a blackberry hedge grew. They further testified that they considered this blackberry hedge to be the southern boundary of their property and planted and maintained a lawn which extended south to the hedge and clipped the hedge on their side since it provided them with privacy.

It was undisputed at trial that in 1960 the Reymores had the blackberry hedge removed. Mrs. Tharp testified that they then planted locust trees in the position of the hedge. The Reymores claimed that these locust trees were just wild, not planted by the Tharps.

Subsequent to June 1972, the Tharps moved a large trailer on the property in dispute. The debate between the parties ensued until late in 1972 when they along with two other neighbors for the first time ordered a survey. It showed that part of the Tharps' trailer was located south of the lot line established by the survey. Thirty to sixty days thereafter, the Tharps moved their trailer 5 feet north of the lot line established by the survey. When, in May 1973, the Reymores started to erect a fence along the survey line, the Tharps removed the posts. The Reymores then commenced suit asking the court to fix the boundary line along the recent survey line.

The Tharps answered claiming they had acquired the strip of land in dispute by adverse possession.

The Reymores maintain that the Tharps' use of the property was not exclusive because during the summer months friends of the Reymores parked their cars on the disputed

152

property from time to time and, on at least one occasion, the Reymores parked their boat there.

The Tharps admitted this, but asserted that they permitted it just as a neighborly act and that all during the period from 1956 to 1972, they maintained a lawn from their cabin over the property in dispute. The Reymores asserted there never were any markers indicating a boundary line.

After hearing the evidence, the trial court expressed the view that the use by the claimant was

so apparent that the person whose property is being claimed is or should be aware of such claim, and I think here we see just what the 10 year statute of adverse possession, . . . was designed to meet.

Judgment was entered on July 25, 1974, by the trial court dismissing the Reymores' complaint and confirming the Tharps' acquisition by adverse possession.

█ In affirming the trial court, we note that in adverse possession cases the character of the claimant's possession over the statutory period is one of fact and the trial court's finding in that regard is to be given great weight. *Mugaas v. Smith*, 33 Wn.2d 429, 206 P.2d 332, 9 A.L.R.2d 531 (1949).

To support their position, the Reymores rely on the decision of this court in *Hunt v. Matthews*, 8 Wn. App. 233, 236, 505 P.2d 819 (1973) as follows:

The acts constituting the warning which establishes notice must be made with sufficient obtrusiveness to be unmistakable to an adversary, not carried out with such silent civility that no one will pay attention. The intention to claim title to an area must be objectively exhibited by the claimant.

On the other hand, the Tharps rely on *Butler v. Anderson*, 71 Wn.2d 60, 426 P.2d 467 (1967), in which the court pointed out:

there must be actual possession which is uninterrupted, open and notorious, hostile and exclusive, and under a claim of right made in good faith for the statutory period. *Skansi v. Novak*, 84 Wash. 39, 146 Pac. 160 (1915). The nature of possession and attendant acts necessary to con-

stitute adverse use as to a residential parcel or property are deemed sufficient if a person pleading the statute takes and maintains such possession and exercises such open dominion as ordinarily marks the conduct of owners in general, in holding, managing, and caring for property of like nature and condition.

*Butler v. Anderson, supra* at 64.

The statutory period for adverse possession in this state is 10 years. RCW 4.16.020.

As our State Supreme Court has pointed out,

In the law of adverse possession, 'hostile' does not mean animosity, but is a term of art which means that the claimant is in possession as owner and not in a manner subordinate to the title of the true owner.

*El Cerrito, Inc. v. Ryndak*, 60 Wn.2d 847, 854, 376 P.2d 528 (1962).

Occupancy during the summer only does not destroy the continuity of possession. *Howard v. Kunto*, 3 Wn. App. 393, 477 P.2d 210 (1970).

Expressed declaration by the claimant is not necessary to prove adverse possession. *O'Brien v. Schultz*, 45 Wn.2d 769, 278 P.2d 322 (1954).

The fact of possession and the existence of the requisite elements making up the state of mind that must exist before adverse possession can be said to ripen into title, raise questions of fact.

*Rognrust v. Seto*, 2 Wn. App. 215, 220, 467 P.2d 204 (1970).

Whether actions are open, notorious and hostile is a question of fact to be decided by the trier of the fact. . . . The decision is made within the context of the locality, the nature and character of the property and the use made of it.

(Citations omitted.) *Hunt v. Matthews, supra* at 237.

■ Applying these well settled principles to the facts before it, the trial court determined that the Tharps had acquired the property by adverse possession. As our State Supreme Court has expressed it, if the findings of the trial court are sustained by evidence then even

[i]f we were of the opinion that the trial court should

154

have resolved the factual dispute the other way, the constitution does not authorize this court to substitute its findings for that of the trial court.

*Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959).

The trial court's findings are amply sustained by the proofs. That is sufficient. *Thorndike v. Hesperian Orchards, Inc., supra* at 575.

Affirmed.

FARRIS and ANDERSEN, JJ., concur.