[No. 5770–1. Division One. August 28, 1978.]

ANTON R. DANNER, ET AL, *Appellants,* v. FRED
BARTEL, ET AL, *Respondents.*

*Bell, Ingram & Rice* and *Douglas L. Bell,* for appellants.

*Benjamin Westmoreland,* for respondents.

DORE, J.—The marital community of Anton R. Danner
appeals and the marital community of Fred Bartel cross–

appeals from a judgment quieting title to real property located in Snohomish County in the Danners.

STATEMENT OF THE CASE

In 1941 and 1942, Carl Bartleheimer and his wife received title to property located in Snohomish County. The property was later sold by the Bartleheimers to the Danners in 1967. In the spring or early summer of 1947, following a violent argument between Carl Bartleheimer and his brother, Fred Bartel, who owned adjacent property, Bartleheimer erected a fence in the northern area of the boundary between the properties, using a survey of his property as a reference. Bartleheimer claimed to the east of the fence. At the time the fence was built, Bartel insisted that it was located on his property rather than on the true boundary line dividing the properties. Although Bartel never accepted the fence as being located on the true boundary, he respected the fence as a de facto boundary, and throughout the years he entered onto the disputed property to keep clear a drainage ditch located on said property to prevent surface waters from flowing onto his land. The ditch was maintained openly.

This boundary situation continued until 1973 when Bartel had the property resurveyed and found that the survey line was 13 to 16 feet east of the Bartleheimer fence. Bartel thereafter ordered the fence removed, and when the Danners, who were the subsequent purchasers of the Bartleheimer property, failed to do so, Bartel removed the northerly portion of the fence and replaced it with his own.

The Danners brought suit to quiet title to the property. The court entered judgment quieting title in the Danners and entered the following conclusion of law:

That each of the [Bartels] together or either of them be and they hereby are forever barred from having or asserting any right, title, estate, lien or interest in said disputed lands and premises or any part thereof adverse to the [Danners], except the right to maintain a water course on said property to prevent surface waters from

coming onto the northeastern corner of the [Bartels'] property.

Conclusion of law No. 3. The Danners appeal from that portion of the judgment granting the Bartels a continuous right to maintain the drainage ditch. The Bartels cross-appeal from the judgment quieting title in the Danners by adverse possession. We affirm.

## ISSUES

ISSUE 1: Did the trial court err in finding that the Danners and their predecessor established claims to the property by adverse possession?

ISSUE 2: Do the findings of fact support the court's conclusion of law which reserved the right of the Bartels to maintain a water course on the property?

## DECISION

ISSUE 1.

The first issue is whether the trial court erred in finding that the Danners and their predecessor had adversely possessed a strip of real property which bordered on the Danners' and Bartels' property.

 In order to acquire title by adverse possession, the possession must be actual, uninterrupted, open, notorious, hostile and exclusive for the statutory period. RCW 4.16-.020; *Frolund v. Frankland,* 71 Wn.2d 812, 431 P.2d 188 (1967); *Hunt v. Matthews,* 8 Wn. App. 233, 505 P.2d 819 (1973); *Rognrust v. Seto,* 2 Wn. App. 215, 467 P.2d 204 (1970). *See generally* W. Stoebuck, *The Law of Adverse Possession in Washington,* 35 Wash. L. Rev. 53 (1960). Whether a party has acquired title to property by adverse possession is a question of fact. *Reymore v. Tharp,* 16 Wn. App. 150, 553 P.2d 456 (1976); *Jackson v. Pennington,* 11 Wn. App. 638, 525 P.2d 822 (1974). The trial court's findings will be sustained on appeal if supported by substantial evidence. *Reymore v. Tharp, supra; Diel v. Beekman,* 7 Wn. App. 139, 499 P.2d 37 (1972).

The Bartels claim that the record does not support the trial court's finding that the Danners and their predecessor

introduced sufficient evidence to demonstrate their actual possession of the disputed property. We disagree. For purposes of establishing title through adverse possession, a person need only exercise that degree of dominion and control consistent with an owner in general. *See Butler v. Anderson,* 71 Wn.2d 60, 426 P.2d 467 (1967); *Hunt v. Matthews, supra; Howard v. Kunto,* 3 Wn. App. 393, 477 P.2d 210 (1970). In the written memorandum decision, the trial court explained its finding concerning actual possession:

> It is apparent from the facts that Carl Bartleheimer, and his successors in interest, have been in actual and uninterrupted possession of the property for some 25 years. While it is true that the nature of the possession by Carl Bartleheimer and the [Danners] was not intensive, the possession was consistent with the property owned by them immediately to the east of the disputed strip, and the erection and continuance of the barbed wire fence was a clear assertion of possession and dominion. It is not, of course, necessary for one claiming adverse possession to have possession of property in any particular manner. It is sufficient if the character of possession was consistent with the nature of the land and the use of adjacent land. In the instant case, although Carl Bartleheimer made virtually no use of the land, nonetheless, the fence was his standard in his field, and it effectively prevented the [Bartels] from challenging his possession.

The record supports the trial court's findings concerning the necessary elements of adverse possession, and even "[i]f we were of the opinion that the trial court should have resolved the factual dispute the other way, the constitution does not authorize this court to substitute its findings for that of the trial court." *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 575, 343 P.2d 183 (1959); *Reymore v. Tharp, supra.*

ISSUE 2.

The next issue is whether the trial court erred in reserving in the Bartels, the original record holder of the disputed strip of property, "the right to maintain a water course on

said property to prevent surface waters from coming onto the northeastern corner of the [Bartels'] property." Conclusion of law No. 3.

The Danners contend that this conclusion of law is not supported by the trial court's finding that:

> Although FRED BARTEL respected the fence as a de facto boundary, he did, from time to time throughout the years, enter onto the disputed property and maintain a drainage course on said property for the purpose of preventing surface water originating on the [Danners'] property from flowing onto the northeast corner of the BARTEL property. That this maintenance of the ditch was open, observable, and presumably permissive on the part of CARL BARTLEHEIMER.

Finding of fact No. 10. The Danners argue that because the entry upon the property was presumably permissive, the Bartels acquired no right or interest which could diminish the title obtained by the Danners through adverse possession. We reject this argument.

■■ The Bartels initially held the record title and were the legal owners of the disputed property. As owners, they were legally entitled to exercise all incidents of ownership, including possession, *and* the right to maintain a drainage ditch, which is a right akin to an easement. Although the Bartels lost possession and title to the disputed property because of the adverse possession of the Danners and their predecessors in interest, the quality of the interest acquired by adverse possession was dependent upon the size of the estate actually possessed. "[N]o one can acquire an interest greater than that connoted by his conduct of claim." 7 R. Powell, *The Law of Real Property* ¶ 1025 (1977). The Danners, in attempting to obtain title to the property by adverse possession, *and* also to extinguish the Bartels' nonpossessory right akin to an easement, had the burden of proving that their possession during the statutory period was inconsistent with the exercise of the rights sought to be extinguished. 7 R. Powell, *The Law of Real Property, supra;* 3 *American Law of Property* § 15.14 (1952). In finding that the Bartels periodically entered onto

the disputed property to maintain a drainage ditch, the trial court determined that the Danners did not sustain this burden. Accordingly, the Danners obtained title and ownership to the property by adverse possession, but did not extinguish the Bartels' right to maintain the ditch. The determination that the Bartels continued to exercise a nonpossessory right of entry by maintaining the drainage ditch is not inconsistent with a finding that the Danners and their predecessors in interest had "exclusive" possession for purposes of acquisition of the land by adverse possession. *Kouri v. Burnett,* 415 P.2d 963 (Okla. 1966); 4 H. Tiffany, *The Law of Real Property* § 1141 (3d ed. 1975). *See also* W. Stoebuck, *The Law of Adverse Possession in Washington, supra* at 60.

Affirmed.

ANDERSEN, A.C.J., and CALLOW, J., concur.