IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SANDRA BAIN, a single woman, | ) | |
| | ) | No. 40112-0-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ZACHARY STIDMAN, a single man; | ) | UNPUBLISHED OPINION |
| SABRINA K. SCHOLLS, a single | ) | |
| woman; and DENNIS R. STIDMAN and | ) | |
| SUSAN R. STIDMAN, husband and wife, | ) | |
| | ) | |
| Respondents. | ) | |

COONEY, J. — Zachary Stidman, Sabrina Scholls, Dennis Stidman, and Susan

Stidman (collectively the "Stidmans") purchased property in Omak, Washington. The

Stidmans' property lies east of a five-acre field owned by Sandra Bain. A 1956 easement

grants Ms. Bain access through the Stidmans' property for ingress and egress of farm

equipment. Two outbuildings on the Stidmans' property partially encroached onto

Ms. Bain's property and remnants of an old fence fragmentarily divided the properties.

In 2021, Zachary Stidman (Mr. Stidman) constructed a fence along the western edge of the Stidmans' property, aligning it with the residua of the old fence, and installed two 16-foot gates across the easement road. In response, Ms. Bain filed a complaint seeking to quiet title and for ejectment, trespass, and unreasonable interference with the easement.

Ms. Bain's complaint was tried to the bench. Ms. Bain appeals the court's decision, arguing the court awarded more than a reasonable amount of land around the encroaching structures, incorrectly established a new boundary line, and erroneously found the gates did not unreasonably interfere with her rights under the easement. We affirm and award the Stidmans reasonable attorney fees and costs on appeal.

BACKGROUND

Ms. Bain purchased real property located at 163 Nichols Road, Omak, Washington, in 1995. Ms. Bain's property consists of 25 acres that has primarily been used for alfalfa production. The upper bench of Ms. Bain's property is 20 acres, and the lower bench is 5 acres. Alfalfa was last grown on the lower bench in 2018. Thereafter, Ms. Bain authorized her daughter to construct a dirt bike track on the lower bench for the benefit of her grandchildren.

The Stidmans own a 2.38-acre parcel of land located at 183 Nichols Road, adjacent to and east of the lower bench of Ms. Bain's property. The Stidmans purchased the property from Randy Redman on June 7, 2019. Ex. 5. Mr. Redman had acquired the

property on March 12, 2019, through a foreclosure sale. Jerry Jenson owned the property until the foreclosure. Mr. Jenson had acquired the property in 2007 from Everett and Lou Venden, who had owned the property since 1950.

The Stidmans' property has two outbuildings on the western border that partially encroached onto the lower bench of Ms. Bain's property. Ex. 9 (Bain 032). The northernmost structure is a shed that encroached on Ms. Bain's property by approximately 7.5 feet, and the southernmost structure is a barn that encroached by approximately 1.2 feet. Ex. 9 (Bain 032).

In 1956, an easement was granted across what is now the Stidmans' property for the benefit of Ms. Bain's property. Ex. 1-2. The easement provides:

> Also, the right to use the *existing roadway* across the South portions of said [property] which lies between the County road and fence which has now been built alongside said roadway for purposes of ingress and egress and to haul produce across the same and move farm machinery. SUBJECT, however, to the Grantors' right to use said road also.

Clerk's Papers (CP) at 22 (emphasis added). The "existing roadway" (roadway) has been in existence since the 1950s and is bordered to the north by a row of junipers and to the south by a steep embankment. Ex. 9 (Bain 032), 11 (Bain 043, 045). The junipers date back to at least 1974. Ex. 17. The roadway allows Ms. Bain access to her property and the Stidmans access to their outbuildings and the back portion of their property. Exs. 20, 21.

Mr. Stidman erected a fence in 2021 that extended from an old fence line on the eastern edge of the lower bench of Ms. Bain's property. Mr. Stidman also installed a 16-foot gate at the southern end of the fence where it crossed the roadway, and a second 16-foot gate near the entry of roadway on Nichols Road. Exs. 9, 10 (back gate Bain 037, front gate Bain 039).

On September 8, 2021, Ms. Bain filed a complaint against the Stidmans to quiet title and for ejectment, trespass, and unreasonable interference with the easement. The Stidmans answered the complaint and asserted the affirmative defenses of adverse possession and mutual recognition and acquiescence.

At trial, Ms. Bain testified that the shed and barn were erected prior to her purchasing the property in 1995, and that the land under the shed and barn should be granted to the Stidmans. Mr. Stidman testified the distance between the shed and barn to his newly-constructed fence was sufficient space to maintain and access the structures.

Conflicting evidence was presented about the existence of an old fence between the two properties. Kaden Desautel testified to the absence of a fence when she frequented Ms. Bain's property between 2010 and 2015. However, Ms. Desautel was unable to recall if old creosote posts were present in the area. Dorothy Harvey testified she has lived near the properties since 1972 and did not recall a fence between the two properties. Shauna Watts testified she lived in the area for 44 years and never saw a fence between the two properties, although she could not definitively rule out the

presence of a fence. Ms. Watts later equivocated and recalled the absence of a fence. Maddox Bain testified that he saw a barbed wire fence in the area when Randy Redman owned the property.

Mr. Stidman testified he used remnants from the old fence to determine where to construct the new fence. He testified that he removed the existing fence posts as he strung the line for the new fence. Mr. Stidman testified he installed the 16-foot gates to deter trespassers and squatters, not with the intent of denying Ms. Bain access to the roadway. Mr. Stidman claimed he informed Ms. Bain that he had purchased the largest available gates. Mr. Stidman testified the gate nearest Nichols Road was always left open, and the second gate was never locked. He denied ever preventing Ms. Bain from accessing the roadway.

Ms. Bain presented the testimony of farmer Anthony Call. Mr. Call testified he had not driven down the roadway since the gates were installed. Mr. Call testified the cutting bar on his swather is 15-and-a-half feet wide, making it difficult to navigate a 16-foot opening.

The court entered extensive findings of fact and conclusions of law after the trial concluded. The court awarded the Stidmans the property under the shed and barn, as well as the property between the structures and Mr. Stidman's newly-erected fence. In partial reliance on a 1974 aerial photograph of the area, the court adopted Mr. Stidman's new fence line as the boundary line between the two properties. The court further found

the 16-foot gates did not unreasonably interfere with Ms. Bain's access to the roadway. Lastly, the trial court denied both parties' requests for attorney fees and costs.

On appeal, Ms. Bain contends (1) the trial court's finding of the Stidmans' structural encroachment onto her property was insufficient to award the Stidmans such a vast amount of property, (2) insufficient evidence was presented to support the court's finding that an old fence had existed in the area of the new fence and of mutual recognition and acquiescence, and (3) installation of the gates unreasonably interfered with her rights under the easement. We disagree with each of Ms. Bain's arguments, affirm, and award the Stidmans attorney fees and costs.

## ANALYSIS

A trial court's findings of fact are reviewed for substantial evidence. *Goodeill v. Madison Real Estate*, 191 Wn. App. 88, 97, 362 P.3d 302 (2015). "'Substantial evidence' is evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise." *Price v. Kitsap Transit*, 125 Wn.2d 456, 464, 886 P.2d 556 (1994). Unchallenged findings constitute verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

A finding that disregards uncontradicted evidence is not binding on an appellate court. *State ex rel. Coyle-Reite v. Reite*, 46 Wn. App. 7, 11, 728 P.2d 625 (1986). However, this court will not review challenges to weight and credibility determinations, deferring to the trial court's interpretation of disputed testimony when any reasonable

view substantiates its findings, even though there may be other reasonable interpretations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990); *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 501, 663 P.2d 132 (1983).

PROPERTY ABUTTING THE STRUCTURAL ENCROACHMENTS

Ms. Bain argues the trial court awarded the Stidmans more than a reasonable amount of property abutting the encroaching structures. Specifically, Ms. Bain asserts the encroachment of the structures, in and of itself, is insufficient to create a new boundary line. We agree that an award of property beyond a reasonable amount of the land surrounding an encroaching structure must be proved by adverse possession. However, we disagree the court awarded the Stidmans an unreasonable amount of property.

In *Shelton v. Strickland*, 106 Wn. App. 45, 51, 21 P.3d 1179 (2001), we affirmed the award of property surrounding a building, holding that the encroachment of a building on another's land amounted to possession of not only the land on which the building was situated, but also "a reasonable amount of the surrounding territory."

In reliance on *Shelton*, the trial court awarded the land between the outbuildings and the new fence line to the Stidmans. The court found that using the new fence line as a boundary marker allows the Stidmans "access to the south-facing entrance of the shed and permits access to space on the west side of the shop for maintenance, snow accumulation, and mowing or fire mitigation activities." CP at 60. The court further

7

found that using the new fence line as a boundary allowed the Stidmans "vehicular and other access to the car-sized door on the south wall of the shop." CP at 60. The trial court's findings were based on, among other evidence, an unaccompanied site visit, photographic evidence, and Mr. Stidman's testimony that he would be able "to get around" his outbuildings if the court granted him the area between the outbuildings and the new fence line. Rep. of Proc. at 311.

Substantial evidence supports the trial court's finding that the property between the outbuildings and the new fence line was necessary for the Stidmans to access and maintain the structures. Moreover, as discussed below, the property awarded to the Stidmans was either adversely possessed by the Stidmans' predecessors in interest or was gained through mutual recognition and acquiescence.

NEW BOUNDARY LINE

In addition to granting the Stidmans the property between the outbuildings and the new fence line, the court also set a new boundary line between the two properties. The court found the Stidmans, through their predecessors in interest, adversely possessed the disputed property, and the boundary was set through mutual recognition and acquiescence.

The court provided three bases for setting a new boundary line between the properties, grounded in adverse possession, mutual recognition and acquiescence. First, the court found the 1974, 2006, and 2011 aerial imagery revealed a third building, that no

longer existed, but had aligned with the western edge of a driveway and the shed. Exs. 17, 18, 19. The court reasoned the structure's existence was evidence of the hostile possession of that portion of property by the Stidmans' predecessors in interest.

Secondly, the court found that extending the territory to the south is reasonable because it is "obviously and logically" connected to the areas actively used by the Stidmans to the north. CP at 60. Based primarily on the 1974 and 2011 aerial imagery, the court found the bend in the driveway used to access the outbuildings has "historically encroached to a point slightly west of the western edge of the now-destroyed outbuilding—a location that . . . coincide[s] with the position of the fence" the Stidmans' erected. CP at 60.

Thirdly, under mutual recognition and acquiescence, the court found the property line was "certain and defined physically on the ground by a roadway," and historical aerial imagery shows consistent occupancy and usage by the Stidmans' predecessors. CP at 60.

### Adverse Possession

"Any person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action in the superior court of the proper county." RCW 7.28.010. To succeed on a claim of adverse possession, a plaintiff must establish that possession was "1) exclusive, 2) actual and uninterrupted, 3) open and notorious and 4) hostile and under a claim of right made in good faith" for a period of 10

years. *Chaplin v. Sanders*, 100 Wn.2d 853, 857, 676 P.2d 431 (1984). A plaintiff desiring to quiet title must succeed on the strength of their title and not the weakness of the opposing claim to title. *Desimone v. Spence*, 51 Wn.2d 412, 415, 318 P.2d 959 (1957).

Possession or occupancy for adverse possession depends on the property's nature, character, location, and typical use. *Anderson v. Hudak*, 80 Wn. App. 398, 403, 907 P.2d 305 (1995). Placing structures, or partially encroaching on another's land, constitutes possession of both the structure's footprint and a reasonable surrounding area. *Shelton*, 106 Wn. App. at 51. Building and maintaining a structure on, or partially on, another's land is almost always exclusive, actual, continuous, open and notorious, hostile, and done under a claim of right. *Id.* In determining a boundary line, a trial court may project between objects when reasonable and logical. *Lloyd v. Montecucco*, 83 Wn. App. 846, 854, 924 P.2d 927 (1996).

Adverse possession presents a mixed question of law and fact. *Hudak*, 80 Wn. App. at 401-02. Where, as here, a trial court weighed the evidence, our review is "limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law." *Org. to Pres. Agric. Lands v. Adams County*, 128 Wn.2d 869, 882, 913 P.2d 793 (1996). Whether the findings of fact support the conclusions of law is reviewed de novo. *Scott's Excavating*

10

*Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 341-42, 308 P.3d 791 (2013).

On appeal, Ms. Bain challenges only one element of adverse possession—that the Stidmans possessed the property for 10 consecutive years. Ms. Bain claims, "the Stidmans would have to tack back through four (4) predecessors in interest" to establish 10 years of possession, and the Stidmans failed to present testimony from any of their predecessors in interest. Appellant's Br. at 16.

Although the Stidmans failed to present testimony from their predecessors in interest, substantial evidence supports the trial court's finding that the Stidmans' predecessors in interest adversely possessed the disputed land for 10 consecutive years. In support of the trial court's findings, aerial imagery from 1974 shows structures and a driveway along the south side of the Stidmans' property that had been used by occupants of the now-Stidman property to access the barn and shed. Once the statutory period for adverse possession has run, the adverse possessor has title to the property. *El Cerrito, Inc., v. Ryndak*, 60 Wn.2d 847, 855, 376 P.2d 528 (1962). Based on the 1974 photograph, the statutory period for adverse possession would have commenced in 1974, long before Ms. Bain purchased her property in 1995.

Ms. Bain next claims that no evidence was presented of an old fence despite the Stidmans' assertion that an old fence delineated the boundary line for more than 10 years. Contrary to Ms. Bain's argument, the trial court found evidence of a "long-existing metal

fence extending to the creosote posts" near the boundary line. CP at 61. Although evidence that a fence may have once existed in the area may alone be insufficient to establish adverse possession, this evidence, viewed in conjunction with all the other evidence, supports the trial court's findings. The trial court was unable to determine when the fence existed or how long it stood. However, evidence of creosote posts, representing the ends of the metal fence, and testimony of a metal wire fence corroborated the boundary line delineated in the historical aerial imagery. Substantial evidence supports the trial court's finding that an old fence had existed between the two properties in the area where Mr. Stidman constructed a new fence.

Ms. Bain claims the trial court erroneously made reasonable inferences from a poor quality 1974 aerial photograph. Thus, the trial court's finding of a "bend" in the roadway that encroached onto her property is not supported by substantial evidence. CP at 60.

As a preliminary matter, Ms. Bain, citing *Eiden v. Snohomish County Civil Service Commission*, 13 Wn. App. 32, 533 P.2d 426 (1975), advocates for de novo review of the 1974 aerial photograph. Ms. Bain misinterprets *Eiden*. In *Eiden,* we quoted the holding in *Smith v. Skagit County* that allows de novo review where the record lacks "testimony requiring [the court] to assess the credibility or competency of witnesses, and to weigh the evidence, nor reconcile conflicting evidence." *Eiden*, 13 Wn. App. at 37. Here, the

trial court had to assess the credibility of 11 witnesses, not just document evidence. We

therefore decline de novo review.

Turning to the merits, in setting a new boundary line, the trial court found the

1974 aerial photograph compelling:

> [T]he line is certain, and defined physically upon the ground by a roadway
> encroaching on Plaintiff's land, a roadway, which even in historical aerials
> of poor quality, is readily perceptible suggesting consistent occupancy and
> usage by Defendants' predecessors.

CP at 60. The trial court's reliance on the photograph was enhanced by evidence of

physical landmarks, including the edges of the buildings (including the now-demolished

third building) and the western curve of the roadway. Ex. 17. The aerial imagery from

1974, 2006, and 2011 photographs showed no significant changes in these physical

features. *Id.*

Although the photograph is of poor quality, we will not review challenges of what

weight should be given to evidence or the trial court's interpretation of the evidence. In

reviewing the 1974 aerial photograph in conjunction with all the evidence, substantial

evidence supports the trial court's finding of a bend in the roadway that encroached onto

Ms. Bain's property.

*Mutual Recognition and Acquiescence*

Ms. Bain next argues there is no evidence to support a finding of mutual

recognition and acquiescence to the new property line. Under a theory of mutual

recognition and acquiescence, a new boundary may be established between two

properties provided:

> (1) The line must be certain, well defined, and in some fashion physically designated upon the ground, e.g., by monuments, roadways, fence lines, etc.; (2) in the absence of an express agreement establishing the designated line as the boundary line, the adjoining landowners, or their predecessors in interest, must have in good faith manifested, by their acts, occupancy, and improvements with respect to their respective properties, a mutual recognition and acceptance of the designated line as the true boundary line; and (3) the requisite mutual recognition and acquiescence in the line must have continued for that period of time required to secure property by adverse possession.

*Lamm v. McTighe*, 72 Wn.2d 587, 593, 434 P.2d 565 (1967).

The trial court found the aerial imagery taken in 1974, 2006, and 2011 delineates a

historical boundary line. The trial court recognized that the roadway accessing the

buildings, which encroached on Ms. Bain's property, also physically coincided with the

position of the Stidmans' new fence. This roadway is readily perceptible as being long

established, evidenced by the 1974 aerial photograph, even though the photograph is of

poorer quality than more recent imagery. The roadway therefore establishes a well-

defined physical landmark that the preceding property owners mutually agreed was the

boundary line. Furthermore, the court's findings were accentuated by physical evidence

of creosote posts found in the area of the historical boundary line that generally line up

with where the Stidmans erected their new fence. The boundary line adopted by the court

was certain, well defined, and was physically designated on the ground.

Although there is not an express agreement that established a designated line, aerial imagery dating back to 1974 provides circumstantial evidence that the property owners have acquiesced to the placement of the roadway that provides access to the encroaching buildings. Further, Ms. Bain admitted that she was aware the buildings likely encroached onto her property when she purchased the property. Clear and convincing evidence supports the trial court's finding that various property owners, including Ms. Bain, have acknowledged that the boundary line adopted by the court is the historical boundary line.

Finally, the aerial imagery offers compelling evidence that the roadway extending to the new fence has existed since at least 1974. Because this roadway is discernable in the more recent 2006 and 2011 aerial imagery, circumstantial evidence supports the trial court's finding that the previous property owners acquiesced to the western edge of the roadway as the boundary line. As the parties likely recognized this as the boundary line from at least 1974 to 10 years thereafter, the statutory 10-year period for adverse possession would have expired long before Ms. Bain acquired the property.

Substantial evidence supports the trial court's finding of mutual recognition and acquiescence.

INSTALLATION OF 16-FOOT GATES

Ms. Bain argues the trial court erred in finding the installation of two 16-foot gates did not unreasonably obstruct farm equipment from accessing the easement. Ms. Bain

further alleges the court erred in concluding that the use of modern farm equipment constituted an unforeseeable expansion of the original easement grant.

The interpretation of an easement presents a mixed question of law and fact. The determination of the original parties' intent is a question of fact, while the legal effect of that intent is a question of law. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). The intent of the original parties to an easement is ascertained by examining the deed in its entirety. *Id.* If the language of the easement is clear and unambiguous, extrinsic evidence is inadmissible. *Id.* If the easement language is ambiguous, extrinsic evidence may be considered to determine the original parties' intent, the property's condition at the time of conveyance, and the practical construction evidenced by the parties' prior conduct or admissions. *Id.*

Ms. Bain presents two arguments in support of her contention that the gates have unreasonably interfered with her use of the easement. First, Ms. Bain argues the gates create an unreasonable obstruction to farming operations. Second, Ms. Bain claims the gates impose a restriction that could prevent future expansion of the width of the easement if needed.

The easement provides:

Also, the right to use the existing roadway across the South portions of said [property] which lies between the County road and fence which has now been built alongside said roadway for purposes of ingress and egress and to haul produce across the same and move farm machinery. SUBJECT, however, to the Grantors' right to use said road also.

CP at 22.

The trial court found the plain language of the easement controlled. First, the easement refers to an "existing roadway." CP at 64. The trial court found the "existing roadway" was presently in the same condition as it was when the easement was granted. *Id*. The easement next references a fence that was likely located to the north of the "existing roadway." *Id*. While this fence is no longer in existence, there is a hedge of junipers that has existed since at least the 1970s that limits the width of the easement to the north. Finally, as the trial court found, the "existing roadway" is bracketed to the south by a steep embankment. *Id*.

Furthermore, Ms. Bain retained a surveyor who determined the "existing roadway" was 12 feet and 3 inches at its widest point and 10 feet and 4 inches wide at its narrowest point. CP at 62. Given the dimensions of the road as it has seemingly existed since the easement was granted, the trial court found Ms. Bain was able to access her property for farming purposes from the time she acquired the property until 2018 when the property was last farmed. The court found the gates did not pose an unreasonable interference with Ms. Bain's use. Further, the trial court found that due to the limitations of the topography surrounding the easement, expansion of the road to a more customary 20-foot width would be impossible.

The trial court found the installation of the gates benefited both parties as they serve to protect the parties from trespassers. Although the gates may be an impediment to Ms. Bain's access, the court found the gates do not unreasonably interfere with her access because use of larger farm equipment would either damage the juniper hedge or require its removal.

Ms. Bain asserts that parties creating an easement without any limiting language should be assumed to have contemplated the natural development of the easement over time. *Logan v. Brodrick*, 29 Wn. App. 796, 800, 631 P.2d 429 (1981). Ms. Bain's interpretation of *Logan* is partially correct. However, the scope of the easement bears on how the easement is used, notwithstanding any contemplations that the parties might have had about normal future development. In *Logan*, the court determined the permissible scope of the easement by looking at the intentions of the parties when the easement was created, the nature and situation of the properties, and how the easement has been used. *Id.*

Here, the easement specifically references an "existing roadway." CP at 11, 22. This roadway is fixed on the north by a bank where junipers grow and the corner of Mr. Stidman's garage. It is bound on the south by a steep embankment. The recent survey indicated that the road was no wider than 12.3 feet and was as narrow as 10.4 feet. Ex. 9 (Bain 032). Aerial imagery going back to 1974 shows the roadway was in substantially the same condition. Ex. 17.

Historic use of the easement suggests Ms. Bain or her tenant took farm equipment across this easement from sometime shortly after she acquired the property until 2018. Ms. Bain testified that 14-foot wide equipment had traversed the easement in the past, and the equipment can get through because it rides up off the ground. No evidence was presented of any attempt to move farming equipment onto Ms. Bain's property that was wider than the gates that were installed. Rather, witnesses speculated it would be difficult to get large equipment through the gates.

The nature and scope of Ms. Bain's easement is to provide farm equipment access to her property. The widest farm equipment used on Ms. Bain's property is a 15-and-a-half-foot swather. The width of the easement is less than that of the swather.

Ms. Bain also argues that Washington courts have recognized that under some circumstances, an easement may be expanded to accommodate larger equipment. *Sunnyside Valley*, 149 Wn.2d at 877. In *Sunnyside Valley*, the court held that "[a] floating easement can be expanded over time if the express terms manifest clear intent by the original parties to modify the initial scope based on future demands." *Id.* at 887-88.

In *Sunnyside Valley*, the irrigation district had equipment ready to move through the easement. *Id.* at 879. There was no speculation that at some point in the future the irrigation district may want to get larger equipment through. Here, Ms. Bain only offers speculation that at some point the dominant estate might want to bring in equipment that might not fit through the gates. Further, nothing in the express terms of the easement

manifests a clear intent by the original parties that the scope of the easement may be modified by future demands. The road itself is a limiting factor, and the topography surrounding the road prohibits expansion.

Finally, Ms. Bain's easement is not a floating easement subject to the holding in *Sunnyside Valley*. As that court explained, an easement defined in general terms, without a definite location or description, is called a floating easement. *Id.* at 880. Ms. Bain's easement has a definite location and description.

Substantial evidence supports the trial court's finding that the installation of two 16-foot gates did not unreasonably interfere with Ms. Bain's rights under the easement.

ATTORNEY FEES

RAP 18.1 requires a party to request to recover reasonable attorney fees and expenses if applicable law allows that party to do so. RCW 7.28.083(3) authorizes the award of costs and reasonable attorney fees to the prevailing party in an action asserting title to real property by adverse possession, if the court determines such an award is equitable and just. An award of costs and reasonable attorney fees is available on appeal. *Workman v. Klinkenberg*, 6 Wn. App. 2d 291, 308-09, 430 P.3d 716 (2018).

The Stidmans request attorney fees and costs. Justice and equity are served by granting the Stidmans' request. Although Ms. Bain has the right to appeal, the expense of continued litigation at her insistence should not be placed on the Stidmans.

No. 40112-0-III
*Bain v. Stidman*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Cooney, J.

WE CONCUR:


_____
Fearing, J.


_____
Lawrence-Berrey, C.J.

21